IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DIANE JONES, as the Administrator of the ESTATE of DEMETRIUS H. NICHOLS, Deceased,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>WEXFORD HEALTH SOURCES, INC.,<br>DR. MOHAMMED Z. SIDDIQUE,<br>DR. STEPHEN RITZ,<br>DR. HECTOR GARCIA,<br>DR. KURT OSMUNDSON,<br>ALI DEARMOND, NP, and<br>TAMMIE RABLE, RN, Individually and as employees/agents of WEXFORD HEALTH SOURCES, INC,<br>　　　　　　　Defendants. | Case No. 24-cv-00796-SMY |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Diane Jones, Administrator of the Estate of Demetrius Nichols, brings this action against Wexford Health Sources, Inc. ("Wexford"), Dr. Mohammed Siddique, Dr. Stephen Ritz, Dr. Hector Garcia, Dr. Kurt Osmundson, Ali Dearmond, NP, and Tammie Rable, RN, alleging violations of 42 U.S.C § 1983 and asserting state law survival and wrongful death claims. Now before the Court is a motion to dismiss Plaintiff's First Amended Complaint filed by Defendants Wexford and Drs. Osmundson, Ritz, and Garcia (Doc. 91). Plaintiff filed a Response in opposition (Doc. 98). For the following reasons, the motion to dismiss is **GRANTED in part** and **DENIED in part**.

## Background

Plaintiff makes the following relevant allegations in the First Amended Complaint (Doc. 75): Plaintiff's decedent Demetrius Nichols was an asthma patient incarcerated within the Illinois Department Corrections ("IDOC"). His condition worsened due to nasal polyps, leading to their surgical removal in 2013. Nichols' medical records, which include details of this procedure, his asthma history, and the need for ongoing treatment, followed him as he transferred between IDOC facilities.

On July 24, 2019, while at Illinois River Correctional Center, Nichols reported difficulty breathing due to recurring nasal polyps. Nurses informed him that they needed to follow protocol before he could see a doctor for his condition.

On August 29, 2019, a nasal exam confirmed swelling, redness, and significant congestion, making it difficult for Nichols to breathe. The examination notes advised referring to a medical doctor if symptoms did not resolve in 10 days. Nichols continued to experience breathing difficulties.

On September 27, 2019 and October 5, 2019, nurses examined Nichols and confirmed large bilateral nasal swelling. Dr. Osmundson provided Nichols with steroids, but they were ineffective.

On February 11, 2020, Dr. Osmundson requested an ear-nose-throat ("ENT") evaluation for Nichols, which Dr. Garcia approved by utilization review on February 18, 2020. However, the evaluation did not occur until seven months later. On February 27, 2020, Nichols was transferred to Menard Correctional Center, where he continued to suffer from his nasal condition.

Nichols' health care unit progress notes dated June 9, 2020 indicate "nasal polyps are worse . . . can be seen easily blocking air nasal passage" and marked the authorized ENT as a

priority. (*Id.*, p. 7). On September 16, 2020, the ENT evaluation authorized seven months earlier took place. Nichols was diagnosed with bi-later nasal polyposis, total obstruction. The consultant recommended a CT scan, reducing steroids dosage, nasal spray, and a follow-up after the CT scan to discuss surgical removal of the polyps. Dr. Siddique requested a CT scan, which Dr. Ritz approved. The CT scan taken on December 1, 2020 revealed "near complete opacification of the right maxillary sinus" and "diffuse opacification and near opacification of paranasal sinuses." (*Id.*, p. 8).

On December 4, 2020, Nichols reported a pain level of eight out of ten. On December 7, 2020, Dr. Siddique urgently requested for a follow-up ENT evaluation, which Dr. Ritz approved. Following an ENT review of the CT scan on December 21, 2020, Nichols was referred to a specialist at Washington University Hospital for a scheduled appointment on February 1, 2021.

On the evening of January 28, 2021, Nichols was found on the floor of his cell gasping, coughing, and stating he could not breathe. Later, during his transfer to Menard HCU, Nichols became unresponsive. He was pronounced dead at 8:41 p.m.

Plaintiff asserts four causes of action in the First Amended Complaint:

**Count I:** a claim under 42 U.S.C. § 1983 against Dr. Siddique, Dr. Dr. Garcia, Dr. Osmundson, Dearmond, NP, and Rable, RN, in their individual capacities and as Wexford employees/agents for violations of the Eighth Amendment;

**Count II:** a *respondeat superior* claim against against Wexford Health Sources under the Illinois Wrongful Death Act;

**Count III:** an Illinois Survival Action claim based on *respondeat superior* against Wexford Health Sources; and

**Count IV:** a *Monell* claim under 42 U.S.C. § 1983 against Wexford Health Sources.

Defendants Drs. Osmundson, Ritz, and Garcia move to dismiss Count I as barred by the applicable statute of limitations. Defendant Wexford seeks dismissal of the claims against it based on the actions of those defendants (Counts II and III) on the same basis.

## Discussion

When considering a Rule 12(b)(6) motion to dismiss, the Court accepts all allegations in the Complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although "a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations," a district court may dismiss a claim under Rule 12(b)(6) if the complaint reveals that the claim is unquestionably untimely. *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 (7th Cir. 2017).

### Federal Claims (Counts I and IV)

Defendants Drs. Osmundson, Garcia, and Ritz seek dismissal of Count I on the grounds the claims asserted are barred by the applicable two-year statute of limitations. Specifically, they argue that Plaintiff's claims against these defendants accrued in 2020, rendering the filing of this case on January 24, 2023 untimely.

In assessing the timeliness of a federal civil rights case in Illinois, courts look to the state's two-year personal injury statute of limitations. *Wallace v. Kato*, 549 U.S. 384, 387 (2007); 735 ILL. COMP. STAT. 5/13-202; *see also Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993). Federal law, however, "determines the accrual of a claim." *Wilson v. Giesen*, 956 F.2d 738, 740 (1992). Where an ongoing period of inadequate medical treatment for a prisoner is alleged, the doctrine of continuing violation of constitutional rights may mean that the statute of limitations does not start to run until the last day of the plaintiff's ongoing injury.

*Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001); *see also Devbrow v. Kalu*, 705 F.3d 765, 770 (7th Cir. 2013).

Here, Defendants argue that Plaintiff's claims against Drs. Osmundson, Garcia, and Ritz are not based on alleged continuing violations. Dr. Osmundson contends that he last treated Nichols at Illinois River on February 18, 2020, and that Nichols was no longer under his care upon his transfer to Menard on February 27, 2020. Drs. Garcia and Ritz claim that their involvement in Nichols' medical treatment ceased on February 18, 2020, and December 10, 2020, respectively.

In the Amended Complaint, Plaintiff alleges that Dr. Osmundson, the Medical Director at Illinois River, administered ineffective steroid treatments when Nicols' nasal polyps recurred in July 2019 and delayed requesting an ENT evaluation until February 11, 2020. Plaintiff does not allege that Dr. Osmundson was involved in Nichols' medical treatment or had the ability to address his condition after his transfer to Menard. *See Heard*, 253 F.3d at 318; *Vucetic v. David*, No. 3:22-cv-00004-SMY, at *1 (S.D. Ill. May 16, 2022). Thus, Plaintiff's claim against him accrued on February 27, 2020, at the latest and the statute of limitations expired on February 27, 2022, rendering Plaintiff's claims against Dr. Osmundon untimely. Likewise, Plaintiff's Monell claims against Wexford for underlying constitutional violations by Dr. Osmundson (Count IV) are time-barred.

Plaintiff alleges that Dr. Garcia, despite conducting a utilization review and approving an ENT evaluation in February 2020, did not ensure it was carried out, resulting in a seven-month delay in critical treatment for Nichols. Plaintiff further alleges that after approving a CT scan and an urgent ENT follow-up for Nichols on December 10, 2020, Dr. Ritz failed to ensure timely diagnosis and treatment. At this juncture, the Court cannot conclude that the continuing

constitutional violations doctrine does not apply to the claims against these two physicians – the allegations in the Amended Complaint do not reveal that the claims are "unquestionably untimely." Accordingly, Defendants motion to dismiss Count I as to Drs. Garcia and Ritz and the *Monell* claim against Wexford for the alleged underlying constitutional violations by these defendants in Count IV is denied.

### State Law Claims (Counts II and III)

Plaintiff's wrongful death claim under 740 ILCS § 180/1 and survival action under 755 ILCS § 5/27-6, asserted against Wexford, are based on a *respondeat superior* theory. A two-year statute of limitations also applies to these claims, and Illinois law recognizes that a continuing violation may extend the two-year statute of limitations for personal injury, if the unlawful acts and conduct continue beyond the initial violation. *Feltmeier v. Feltmeier*, 207 Ill.2d 263, 277–281 (Ill. 2003); *Bank of Ravenswood v. City of Chicago*, 307 Ill.3d 161, 166–169 (Ill. App. 1999).

For the same reasons previously discussed, the Court cannot conclude at the pleading stage that the statute of limitations unquestionably applies to bar the claims based on the conduct of Drs. Garcia and Ritz and other agents/employees of Wexford. Therefore, Defendants' motion to dismiss Counts II and III is denied.

**Conclusion**

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 91); the Motion is **GRANTED** as to Plaintiff's Eighth Amendment claims (Count I) against Defendant Kurt Osmundson and *Monell* claim (Count IV) based on Dr. Osmundson's conduct. Accordingly, Defendant Kurt Osmundson is **DISMISSED without prejudice**. The Motion is **DENIED** in all other respects.

**IT IS SO ORDERED.**

**DATED: March 24, 2025**

**STACI M. YANDLE**
**United States District Judge**